[No. 13028.   Department Two.   November 14, 1916.]

FIDELITY NATIONAL BANK OF SPOKANE, *Respondent*, v. E. H. STANTON COMPANY et al., *Appellants*, MILLARD S. HOSEA et al., *Defendants*.[1]

BILLS AND NOTES—LIABILITY OF INDORSERS—PREVIOUS AGREEMENT —MODE OF PAYMENT—FRAUDS, STATUTE OF—EVIDENCE—PAROL TO VARY WRITING. Regular indorsers of a mortgage note, negotiable on its face, warrant the genuineness of the instrument, the title, the capacity of all prior parties to contract and that the instrument was valid and subsisting at the time, and in addition engage to pay on notice of dishonor; and, therefore, they cannot avail themselves of a prior agreement by an indorser to accept in payment a quitclaim deed of the mortgaged property; since (1) such agreement if existent, is superseded by the indorsement, and (2) the indorsement cannot be varied or altered by a contemporaneous oral agreement, void under the statute of frauds.

MORTGAGES—PAYMENT — AGREEMENT TO ACCEPT PROPERTY — CONTRACT BY SUBSEQUENT PURCHASERS. An agreement with purchasers of mortgaged property who had not assumed the debt to dismiss a foreclosure suit, in consideration of an agreement to quitclaim the land if delinquent interest was not paid within a certain time, is not an agreement to accept payment in land that would discharge the note as to the makers and indorsers; and being made with a stranger to the obligation does not imply such an agreement.

SAME. A quitclaim deed of mortgaged premises tendered to the holder of the note pursuant to an agreement with an indorser is not accepted by the holder so as to release indorsers and discharge the obligation, where the holder returned it stating it should be made in blank, the holder expecting to turn it over to the indorser under the belief that he would pay the note and accept the deed.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered January 5, 1915, upon findings in favor of the plaintiff, in an action on a promissory note and to foreclose a mortgage, tried to the court.   Affirmed.

*Danson, Williams & Danson* and *Post, Avery & Higgins* (*George D. Lantz*, of counsel), for appellant Stanton Company.

[1]Reported in 160 Pac. 960.

*Burcham & Blair*, for appellant Zirngibl.

*Hamblen & Gilbert*, for respondent.

FULLERTON, J.—On October 16, 1912, Hosea and wife made and delivered to the E. H. Stanton Company their promissory note wherein they agreed to pay E. H. Stanton Company $25,000, with interest from date at the rate of 7 per cent per annum, payable semiannually. The note contained an accelerating clause to the effect that, if the interest was not paid when due, the principal and interest of the note should become due and payable at the option of the holder of the note. At the time of the execution of the note and as a part of the same transaction, Hosea and wife also executed to the payee of the note a mortgage upon real property situated in Spokane county, securing the note according to its tenor and effect. Subsequent to the execution of the note and mortgage, Hosea and wife conveyed the mortgaged property to James Hunter and C. S. Slawson subject to the mortgage. Certain installments of interest on the note were not paid, and on August 27, 1913, E. H. Stanton Company, its then holder, brought an action to recover thereon and to foreclose the mortgage. After the institution of the action, Hunter and Slawson, under the date of September 8, 1913, wrote to the E. H. Stanton Company making the following proposition:

"In consideration of your dismissing the foreclosure suit against lots six (6) and seven (7), block sixty-seven (67), school section, Spokane, Washington, and extending the payment of interest on the $25,000 mortgage secured by the above described property to, on or before May 1, 1914, we agree to convey by quitclaim deed to you and relinquish all interest in the aforesaid property not later than May 1, 1914, provided the aforesaid interest is not fully paid by us before the aforesaid date to December 1, 1913.

"In consideration of the extension of payment of interest we further agree to pay the premiums on all insurance now covering the building on the above described property, and to pay all taxes for the year 1912."

The company accepted the proposition through its attorney by the following writing:

"Your letter of September 8, 1913, addressed to E. H. Stanton Company was turned over to me by the E. H. Stanton Company for answer. Your proposition is hereby accepted and I will get the order of dismissal signed tomorrow."

The foreclosure action was thereupon dismissed.

Shortly thereafter E. H. Stanton Company sold the note and mortgage to one Isabel M. Gray, who in turn sold it to Joseph Zirngibl. However, the note was delivered and the mortgage assigned by the company directly to Zirngibl. Subsequently the note was sold and the mortgage assigned by Zirngibl to the plaintiff, Fidelity National Bank, the bank received the same on April 6, 1914, and the purchase was entered on their books as of the next day. On delivering the note to Zirngibl, E. H. Stanton Company regularly indorsed the same, and on delivery of the note to the bank, Zirngibl likewise regularly indorsed it. Hunter and Slawson did not pay the interest as they agreed to do in their communication to E. H. Stanton Company, but in lieu thereof made and executed and tendered to the bank their deed to the property. This deed the bank returned to them with the following note:

"We return herewith the deed which you sent to us, which should be made in blank. We do not want the deed made to us."

No deed in any other form was tendered. Thereafter the bank demanded payment of the note from the principal and from the indorsers, and on their refusal to pay, began the present action to recover thereon and to foreclose the mortgage.

The complaint was the ordinary complaint in an action to recover upon a promissory note and to foreclose a mortgage given to secure it. E. H. Stanton Company and Zirngibl answered separately. E. H. Stanton Company, after certain denials, set up affirmatively that Hunter and Slawson,

as part consideration for the conveyance to them of the mortgaged property by Hosea and wife, assumed and agreed to pay the mortgage. It set up, also, the commencement of the foreclosure action, its subsequent dismissal because of the contract between itself and Hunter and Slawson, and averred that it was the understanding between them that the deed therein agreed to be delivered was to be in satisfaction of the note and mortgage sued upon, and that it agreed to take it in full satisfaction of such note and mortgage; averring further that the subsequent transfer of the note and mortgage were made with knowledge of such agreement, and with the understanding and agreement on the part of the several transferees that a conveyance of the land was to be received by such transferee in full satisfaction of the note and mortgage. Zirngibl's answer was to the same effect.

The evidence, as we read it, did not justify these averments in their entirety. There is no evidence that Hunter and Slawson had in any manner assumed the mortgage or had agreed to pay the note, nor was there any evidence, other than the inferences arising from the writings, that either E. H. Stanton Company or Zirngibl, or the present holder of the note, agreed to take the property in satisfaction of the debt. Zirngibl knew of the written agreement between E. H. Stanton Company and Hunter and Slawson when he purchased the note and took an assignment from that company, and the bank had the same knowledge when it purchased the instruments from Zirngibl.

It is the contention of the indorsers that these writings changed the tenor of the note as to the medium of payment, that is, the note was changed by the agreement from an obligation payable in money to an obligation payable in specific property, and the deduction is drawn therefrom that the indorsements were implied agreements that the note would be paid according to its tenor as thus modified, and hence the tender of a deed to the mortgaged property, in accordance with the modified agreement, satisfied the obligation.

We cannot think these contentions tenable. The indorsements were. without qualification. They were new and independent contracts, embodying all of the terms of the instrument indorsed in itself. Daniel, Negotiable Instruments (6th ed.), § 669. By the terms of the negotiable instruments act, the indorsers severally warranted: (1) that the instrument was genuine and in all respects what it purported to be; (2) that he had good title to it; (3) that all prior parties had capacity to contract; (4) that the instrument was, at the time of the indorsement, valid and subsisting; and (5) in addition, engaged that, on due presentation, it would be accepted and paid according to its tenor, and that if it be dishonored, and the necessary proceedings on dishonor be taken, he would pay the amount thereof to the holder, or to any subsequent indorser who might be compelled to pay it. The warranty was of the instrument as it appeared on its face, free from the burden of any condition either of them may have assented to prior to the indorsement not expressed thereon in writing. Knowledge, therefore, by one taking the instrument that the indorser had agreed to accept payment in something else than money would not relieve the indorser of his obligation, whatever may be the rule with reference to the other party to the agreement. The instrument being negotiable in form, the indorser without qualification is bound by his own contract; he cannot be heard to plead a prior contract made with another party to relieve himself from the one he subsequently made. In other words, his act of indorsement was equivalent to writing the conditions the law implies from an indorsement on the instrument above his signature, and cannot be varied or altered by showing a prior written or prior parol agreement, or by a contemporaneous parol agreement. The first, if existent, is superseded by the new agreement, and the second is void because of the statute of frauds.

But perhaps we need not go to this extent in the present instance. The agreement relied upon to relieve from the obligation assumed by the indorsement does not bear the con-

struction the appellants put upon it.   It is not an agreement
to accept the property in payment of the obligation.   The
agreement was made with one not obligated to pay the debt,
and the expressed consideration was a suspension of the time
within which the holder of the mortgage would enforce the
debt against the property.   There was no express agreement
to take the property in satisfaction of the debt, and since the
contract was made with a stranger to the obligation, none
will be implied.

Another contention is that the bank accepted the deed
from Hunter and Slawson and by that act released the
sureties.   This is founded on the letter written by the bank
when it returned the deed Hunter and Slawson had tendered.
But it is distinctly stated therein that the bank did not wish
the deed made to it.   In explanation, the officer of the bank
having the matter in charge testified that the bank wished
the deed in blank so that it might be turned over to E. H.
Stanton Company, the witness believing that the company
would accept the deed and pay the note.   But whatever the
motive may have been, there was clearly no independent
agreement on the part of the bank to accept the property in
satisfaction of the debt.

The judgment is affirmed.

MORRIS, C. J., ELLIS, MOUNT, and CHADWICK, JJ., concur.